In re Estate of August Richter, Deceased.
John T. Dempsey, Administrator, Appellant, v. Harold
H. Punke, Appellee.

Gen. No. 44,817.

Heard in the third division of

Opinion filed April 5, 1950. Rehearing opinion filed July 26, 1950. Released for publication July 27, 1950.

DON M. PEEBLES, of Chicago, for appellant; WILLIAM J. LUNN and HALBERT O. CREWS, both of Chicago, of counsel.

MILTON K. JOSEPH, of Chicago, for appellee.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

The probate court of Cook county issued letters of administration to John T. Dempsey, Public Administrator of Cook county, Illinois, in the estate of August Richter, deceased, and thereafter denied the petition of Harold H. Punke, a cousin of the intestate, asking for revocation of the letters issued to Dempsey and to issue letters of administration *de bonis non* to Punke. The circuit court, on appeal, reversed the order of the probate court. Respondent Dempsey appeals from the order of the circuit court reversing the order of the probate court. The facts are uncontroverted.

April 10, 1947, August Richter, a resident of the City of Chicago, died intestate. At the time of his death he resided with his sister Amelia Richter who was about ninety years of age and almost blind. The premises occupied by the Richters were squalid, unheated, and poorly furnished.

April 11, 1947, Dempsey filed a petition for letters of administration, stating that Amelia Richter as sole heir of the intestate was ''blind and believed to be wholly incompetent.'' Letters of administration were granted and on the same day, April 11, 1947, Mary Berkemeier, Public Guardian of Cook county, Illinois, was appointed conservatrix of Amelia Richter on the ground that she was incompetent to manage her es-

tate because of her physical infirmities. Shortly after the death of August Richter many letters were received by Dempsey from persons claiming kinship to the intestate, and among them a letter from Harold H. Punke, petitioner in the instant case, stating his relationship to the intestate. Approximately $150,000 in cash and securities came into the hands of Dempsey as public administrator.

In his petition Punke averred that he was one of sixteen first cousins of the intestate and claimed the right to administer the intestate's estate upon the ground that Amelia Richter was an incompetent person.

January 15, 1948, the probate court denied the petition of Punke, whereupon he appealed to the circuit court of Cook county. During the pendency of that appeal the administration of the intestate's estate had been concluded by Dempsey and he made distribution of the intestate's estate to the conservatrix of the estate of Amelia Richter. In the circuit court order before us it was found that Punke filed his petition for the removal of Dempsey in apt time; that Punke was a first cousin of the intestate and was authorized to act on behalf of the other first cousins, and that letters of administration issued to Dempsey be revoked and letters of administration *de bonis non* be issued to Punke upon approval of his bond by the probate court of Cook county. The order further provided that the order of the probate court approving the final account and report of Dempsey be vacated and set aside; that Dempsey surrender the assets of the estate of decedent in his hands to Punke as administrator *de bonis non;* that Dempsey make an accounting of his acts and doings while acting as administrator *de son tort* within twenty days and that the costs of the present appeal be taxed against Dempsey individually.

██ Section 96, par. 248, ch. 3 of the Probate Act of July 24, 1939 [Jones Ill. Stats. Ann. 110.345], provides for the order of preference in obtaining the issuance of letters of administration of estates. This section was formerly section 18 of the Administration Act of 1872 and amended in 1905. In construing section 18 our Supreme Court has repeatedly held that it is the clear intent of the legislature that relatives and creditors of the intestate should be preferred to the public administrator. (*Sanders v. Buenger,* 311 Ill. 572; *Dupee v. Follett,* 304 Ill. 166; *Krome v. Halbert,* 263 Ill. 172.) The purpose of creating the office of public administrator was to give authority to someone to administer on intestate estates where no relative or creditor would administer. In our opinion the cases last cited, which define the long-established legislative policy of this State, are applicable with equal force to section 96 of the present Probate Act here in question.

██ Respondent Dempsey contends that once the probate court has appointed an administrator the matter of revoking the letters of administration in favor of an application subsequently filed by one entitled to a preference lies wholly within the discretion of the court. He argues that the word "may" appearing in sec. 102, par. 254, ch. 3 of the Probate Act [Jones Ill. Stats. Ann. 110.351], which reads:

" . . . the person entitled to a preference shall give ten days' notice of the hearing on his petition to the person to whom the letters were issued. Upon the hearing the court *may* issue letters to the person entitled to the preference . . ."

grants the court a broad discretion, whereas section 48 of the former Act, which is the counterpart of section 102, used the word "shall," which made revocation of letters mandatory. In support of his position, respondent relies on the recent case of *In re Estate of*

337

*Abell,* 395 Ill. 337. In that case the grandchildren of James H. Abell, deceased, filed their petition asking for their appointment as administrator *de bonis non,* which if granted would have placed the petitioners in the conflicting position of prosecuting and defending certain claims against the deceased's estate. In the instant case Punke is not charged with having an adverse interest of some kind, or hostility to those immediately interested in the estate. In the *Abell* case, the court in adverting to *Dennis v. Dennis,* 323 Ill. App. 328, held that the right to be appointed administrator is not an absolute one, and the question of fitness is proper to be considered. In the present case the question of Punke's fitness is not in issue, and therefore we do not regard the *Abell* case as decisive of the issues in this case. In a controversy between the heirs of an estate and the public administrator, this court construed the word ''shall'' in section 18 of the former Act as ''may.'' *Petteys v. Hutchings,* 154 Ill. App. 101. We think defendant's contention is untenable.

■ In his reply brief respondent says that the only question is whether any good purpose may be served by appointing a new administrator of an estate which at the time of the hearing of the petition in the probate court was for all practical purposes completely administered and which at the time of the hearing in the circuit court was distributed. While respondent is to be commended for his diligence in taking possession of the assets of the intestate's estate, we think he acted at his peril in administering the estate while the appeal from the probate court was pending and thereafter. The delay in ruling on Punke's petition in the probate court and for the hearing in the circuit court did not justify the closing of the estate and the distribution of the assets. If this were permissible the

338

purpose of the statute giving the preference to the relatives of the intestate would be defeated.

We have considered the other points urged and the authorities cited in support thereof, but in the view we take of this case we deem it unnecessary to discuss them.

For the reasons stated, the order appealed from is affirmed.

*Order affirmed.*

BURKE and KILEY, JJ., concur.

ON REHEARING.

MR. JUSTICE LEWE delivered the opinion of the court.

In this case a rehearing was granted on the petition of the respondent Dempsey. Having considered the petition and the answer thereto we have decided to adhere to our opinion filed April 5, 1950.

*Affirmed on rehearing.*

KILEY and BURKE, JJ., concur.